IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ZAK SHIMOSE,<br><br>  Plaintiff,<br><br> vs.<br><br>INTERNATIONAL LONGSHORE & WAREHOUSE UNION, LOCAL 142; NATIONAL LABOR RELATIONS BOARD;  UNITED STATES OF AMERICA,<br><br>  Defendants. | CIVIL NO. 21-00489 JAO-RT<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND JOINDER** |

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS AND JOINDER**

Pro se Plaintiff Zak Shimose ("Plaintiff") filed his Second Amended Complaint ("SAC"), ECF No. 54, following the Court's Order Granting Defendant National Labor Relations Board's ("NLRB") Motion to Dismiss and the United States of America's Joinder, ECF No. 52.  In response, Defendants separately filed the following three motions: (1) Defendant NLRB's Motion to Dismiss SAC, ECF No. 59; (2) Defendant United States' Motion to Dismiss and for Joinder, ECF No. 60; and (3) Defendant International Longshore & Warehouse Union, Local 142's ("ILWU") Motion to Dismiss SAC, ECF No. 65 (collectively "motions to dismiss").  The Court addresses all three motions in this single order.

For the following reasons, the Court GRANTS the motions to dismiss (including Defendant United States' joinder motion).

## I.  BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff is an employee of North Hawai'i Community Hospital (the "Hospital"), which has a union contract with the ILWU. *See* ECF No. 54 at 5. On July 11, 2020, Plaintiff asked the ILWU about becoming a nonmember, but never received a response or notification of his *Beck* rights.[1]  *Id.*

In September, the ILWU sent Plaintiff a notice he was delinquent in his dues for $94.91 and referred to a missing attachment of a breakdown of the amount owed. *Id.*  Plaintiff's response letter to the ILWU requested nonmember status, objected to certain fees, alleged the ILWU failed to notify him of his *Beck* and "General Motor rights,"[2] and reserved his right to be a religious objector. *Id.*  A

---

[1] "Beck rights" refers to a union's obligation to inform employees that they may "choose not to become union members and pay dues, or opt to pay only that share of dues used directly for representation, such as collective bargaining and contract administration." NLRB, "Union dues," https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/employees/union-dues (last visited March 30, 2023); *see also Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762–63 (1988) (holding that unions cannot collect funds from nonmembers for activities unrelated to collective bargaining).

[2] "General Motor rights" refers to an employee's right to remain a nonmember of a union. *NLRB v. Gen. Motors Corp.*, 373 U.S. 734–44 (1963).

few weeks later, on October 20, 2020, the ILWU wrote that it complied with all applicable laws and provided requisite notice of Plaintiff's rights through its newsletter. *Id.* at 6. Plaintiff disagreed that notice through a newsletter was sufficient and alleged he did not receive the newsletter. *Id.*

At the beginning of November 2020, the ILWU instructed the Hospital to suspend Plaintiff for 30 days. *Id.* A week later, Plaintiff filed an unfair labor practice charge with the NLRB. *Id.*; *see* ECF No. 54-1. He alleged the ILWU violated his rights under the National Labor Relations Act ("NLRA"). *See* ECF No. 54-1 at 1–3; 29 U.S.C. §§ 158(b)(1)(A),158(b)(2). Plaintiff listed four allegations against the ILWU for: (1) issuing unlawful fines and/or internal charges; (2) refusing to honor his revocation dues check-off; (3) requiring him to pay dues and fees not related to representational activities; and (4) causing the Hospital to discriminate against him in retaliation for failing to pay dues. *See* ECF No. 54-1 at 2.

Plaintiff listed five other points under "Additional Information Provided." *See id.* at 3. Plaintiff argued: (1) the ILWU failed to disclose how Plaintiff could meet his dues-paying obligation as an objector; (2) the ILWU failed to (a) notify him how to object to certain fees, (b) provide sufficient information to assess fees, and (c) apprise him of internal union procedures for filing objections; (3) the ILWU was allegedly deficient in notifying Plaintiff of his *Beck* rights via

3

newsletter; (4) the constitutional right of public employees to not pay union dues should be extended to private employees pursuant to *Janus v. Am. Fed. of State, Cnty., & Mun. Emp., Council 31, et al.*, 138 S.Ct. 2448 (2018); and (5) he reserved the right to object to the ILWU's expenditures on religious grounds. *Id.*

On December 4, 2020, on the advice of an NLRB Field Attorney, Plaintiff paid the ILWU $94.91, the delinquent amount owed. *See* ECF No. 54 at 7. Later in December, Plaintiff reiterated to the NLRB Field Attorney that the ILWU's notification of rights and processes was deficient. *Id.* In January, the ILWU sent Plaintiff another collection notice, this time for $264.87, and again Plaintiff challenged the amount. *Id.* In response, the ILWU sent Plaintiff a Statement of Expenses, which included lobbying as a chargeable expense. *Id.* at 8; *see* ECF No. 54-2. Plaintiff disputed various charges, including those for lobbying, stating that nonmembers need not cover such costs, and asserted that the financial information must be independently verified by an auditor. ECF No. 54 at 8.

On February 18, 2021, the NLRB Regional Director ("RD") dismissed Plaintiff's charges. *Id.*; ECF No. 59-3 ("RD Decision").[3] The RD explicitly

---

[3] In ruling on a motion to dismiss, the Court may rely on exhibits attached to the First Amended Complaint ("FAC"), ECF No. 24. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Court may also consider documents referenced in the SAC "but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *See id.* (citations omitted). As such, the Court will consider the exhibits attached to the SAC and those that it incorporated by reference, which are attached to the SAC.

identified the four issues that Plaintiff listed in his charge under "Basis of the Charge," but did not explicitly address the five additional issues. ECF No. 59-3 at 1. Plaintiff appealed the RD Decision to the NLRB General Counsel ("GC"), which was later dismissed ("GC Decision"). ECF No. 54 at 8; ECF No. 59-5. Plaintiff then filed a motion for reconsideration. While that motion was pending, the ILWU sent Plaintiff a second "Statement of Purpose" — or another statement of expenses — which listed lobbying as a non-chargeable expense. ECF No. 54 at 8. The reconsideration motion was denied by the GC on June 2, 2021. ECF No. 54 at 8; ECF No. 59-7.

Plaintiff filed a petition with the Ninth Circuit, which was dismissed. ECF No. 54 at 9; ECF No. 59-8. The court reasoned that the "determination of the General Counsel of the National Labor Relations Board not to issue an unfair labor practice complaint is not reviewable by the Board or the Court of Appeals." ECF No. 59-14 at 1 (citing *Pac. S.W. Airlines v. NLRB*, 611 F.2d 1309, 1311 (9th Cir. 1980)).

**B.    Procedural History**

Plaintiff filed his initial complaint on December 12, 2021, ECF No. 1, after which Magistrate Judge Rom Trader submitted findings and recommendations to dismiss the complaint for failure to prepay fees or costs ("F&R"). ECF No. 18. The Court adopted the F&R with a modification and gave leave for Plaintiff to file

a First Amended Complaint ("FAC"), which he did on March 7, 2022. ECF No. 24.

On June 27, 2022, the NLRB filed a motion to dismiss, ECF No. 41, and the United States filed a joinder, ECF No. 42. The ILWU filed its motion to dismiss on August 30, 2022. ECF No. 50. The Court decided the Defendants' motions without a hearing pursuant to Local Rule 7.1(c) and granted the NLRB and United States' motions giving Plaintiff "one more chance to amend" the complaint by November 4, 2022. ECF No. 52 at 23. As to the ILWU's motion, the Court concluded it was moot. *Id.* at 24.

Plaintiff filed his SAC on October 30, 2022. ECF No. 54. The NLRB filed its motion to dismiss on November 30, 2022. ECF No. 59. On the same day, the United States filed its joinder and motion to dismiss. ECF No. 60. The ILWU filed its motion to dismiss on December 19, 2022. ECF No. 65. Plaintiff filed an opposition to the NLRB and United States' motions, ECF No. 67, and an opposition to the ILWU's motion, ECF No. 71. The ILWU filed its reply on January 24, 2023. ECF No. 73. A week later, the NLRB filed a notice of supplemental authority pointing to a recently published Ninth Circuit case. ECF No. 74 (citing *NLRB v. Aakash, Inc.*, 58 F.4th 1099 (9th Cir. 2023)).

The Court held a hearing on the motions on February 23, 2023. ECF No. 75.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. *See* Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

### B.  Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the*

*Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz*, 476 F.3d at 760 (citation omitted).

### III.   DISCUSSION

As an initial matter, the Court incorporates its ruling from the Order Granting the NLRB's Motion to Dismiss and the United States' Joinder, *see* ECF No. 52, as the SAC is substantially similar to the FAC. Defendants remain the same in both the FAC and SAC: the ILWU is the defendant for Counts 1 through 3, and the NLRB and United States are defendants for Counts 5 through 7. Additionally, both complaints do not include a Count 4. One difference between the two is that Plaintiff grounds the FAC's claims against the ILWU under 29 U.S.C. § 158, ECF No. 24 at 2, while the SAC cites to 5 U.S.C. § 7114 ("Federal Service Labor-Management Relations Statute") for its claims the ILWU violated its fair representation duty, ECF No. 54 at 10.

But Plaintiff's reliance on the Federal Service Labor-Management Relations Statute is misplaced. *See* ECF No. 54 at 10 (citing to 5 U.S.C. § 7114). The Federal Service Labor-Management Relations Statute establishes collective bargaining rights for federal employees and since Plaintiff is not a federal employee, 5 U.S.C. § 7114 is inapplicable. *See* 5 U.S.C. § 7101; *Am. Fed. of Gov't Emp. Local 2263 v. Fed. Lab. Rel. Auth.*, 454 F.3d 1101, 1103 (10th Cir.

2006) ("The Federal Service Labor Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2000), governs relations between federal agency employers and federal employees.") (citation omitted).

The Court also observes that Plaintiff improperly characterizes his claims against the ILWU's internal procedures as a breach of the duty of fair representation. *See* ECF No. 54 at 12 (arguing the ILWU should place dues in question in an escrow account); *id*. (requesting the financial statement be independently verified by an auditor); *id*. at 13 (challenging ILWU's use of its newsletter as notice of his *Beck* rights). Challenging a union's internal procedures is enough to dismiss the complaint. *See United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't., AFL-CIO*, 770 F.3d 846, 849 (9th Cir. 2014) (concluding that because "dismissal did not interfere with the members' relationship to their employer, the union's decision was an internal affair not subject to judicial scrutiny.") (internal quotation and citation omitted); *Masters v. Screen Actors Guild*, Civil No. 04-2102 SVW, 2004 WL 3203950, at *12 (C.D. Cal. Dec. 8, 2004) ("Since these charges relate to purely internal matters that do not involve [the union]'s activities in representing its members, [plaintiffs] fail to state a [duty of fair representation] claim under *Simo* [*v. Union of Needletrades, Indus. & Textile Emp., Sw. Dis. Council*, 322 F.3d 602 (9th Cir. 2003)]."). The duty of fair representation, in other words, is not available in situations where the

union is not representing the employee. The Court nevertheless addresses each count of the SAC.

### A. Count 1

Plaintiff alleges the ILWU discriminates against nonmembers by requiring that they pay for non-representational activities. ECF No. 54 at 10. Plaintiff points to "faulty calculations" of the ILWU's expenses, the listing of lobbying expenses as representational activities, and the failure to independently verify the financial statements by an auditor as proof of his claim for discrimination. *Id*. at 10–11.

The ILWU argues, and the Court agrees, that Plaintiff's allegations are not sufficient to allege discrimination. A labor union's duty of fair representation is a "statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 171 (1967). To determine if a labor union breached its duty of fair representation, a court follows a two-step process. *Burkevich v. Air Line Pilots Ass'n, Intern.*, 894 F.2d 346, 349 (9th Cir. 1990) (citation omitted). First, a court assesses whether the labor union's alleged misconduct "involved the union's judgment, or whether it was 'procedural or ministerial.'" *Id*. (citation omitted). Second, if the conduct involved the labor union's judgment, "then the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." *Id*. (citation omitted). If the

conduct was procedural or ministerial, "then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory or in bad faith." *Id*. (citation omitted).

To determine whether an action is arbitrary a court must determine whether, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so outside a wide range of reasonableness as to be irrational." *Lamberti v. Int'l Bhd.. of Teamsters*, No. 00-3729, 2003 WL 716244, at *3 (N.D. Cal. Feb. 21, 2003). "The deferential standard for arbitrary conduct gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Beck v. United Food & Com. Workers Union*, 506 F.3d 874, 879 (9th Cir. 2007) (citation omitted). To establish union conduct that amounts to discrimination, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Beck*, 506 F.3d 874, 880 (citing to *Vaca*, 386 U.S. at 190). And to find a union acted in bad faith, there must be "substantial evidence of fraud, deceitful action or dishonest conduct." *Id*. at 1039–40.

In Count 1, Plaintiff does not offer "substantial evidence" nor does he allege action by the ILWU that is "intentional, severe, and unrelated to legitimate union objectives." *Beck*, 506 F.3d at 874. Further, Plaintiff's complaint belies his allegation that he was discriminated against when the ILWU charged him for lobbying expenses. ECF No. 54 at 11. The SAC admits, and the Court takes as

true, that the ILWU revised the second statement of expense to "now list[ ] lobbying as a non-chargeable expense." *Id.* at 8.

To the extent Plaintiff now argues the ILWU's conduct was arbitrary as he did for the first time at the hearing, that contention also lacks merit. At no point in the SAC does Plaintiff allege the ILWU acted arbitrarily. In any event, Plaintiff would need to overcome the deference given to labor unions in "mak[ing] discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998).

The Court GRANTS the motions to dismiss as to Count 1 for failure to state a claim.

### B. Count 2

In Count 2, Plaintiff appears to reiterate the claim in Count 1 that the ILWU discriminated against him for being a nonmember. To establish discrimination, however, Plaintiff must adduce substantial evidence demonstrating ILWU action that is intentional, severe, and unrelated to union activities. *See Beck*, 506 F.3d at 880. Instead, Plaintiff only provides a "ritualistic incantation" of the duty rather than any allegations as to how that duty may have been breached. *Marquez*, 525 U.S. at 39 (citation omitted). While he alleges the ILWU "caus[ed] [the] employer to suspend [him] for not paying dues," Plaintiff offers no facts in support. ECF

No. 54 at 5–9, 12.  In fact, at the hearing Plaintiff admitted he was neither fired nor suspended by the Hospital.

Plaintiff has not demonstrated that he suffered an injury or a severe and intentional act to trigger a duty of fair representation.  The Court therefore GRANTS the motions to dismiss as to Count 2.

### C. Count 3

As he did in Count 3 of the FAC, in Count 3 of the SAC, Plaintiff contends the ILWU's notice of *Beck* rights in its newsletter is improper and that, in any case, he did not receive the newsletter.  ECF No. 54 at 13–14.  He also alleges that failure to allow nonmembers to participate or vote on representational issues "is discriminatory to nonmembers, violating the union's duty [of] fair representation." *Id*. at 14.  Count 3, however, fails again on jurisdictional grounds.

Courts are cautioned that while the duty of fair representation encompasses challenges to "a union's contract administration and enforcement efforts" and "its negotiation activities as well," employees "may not circumvent the primary jurisdiction of the NLRB simply by casting statutory claims as violations of the union's duty of fair representation." *Beck*, 487 U.S. at 743.  "[T]he duty of fair representation regulates only a union's activities in dealing with employers on behalf of union members, and not its *internal affairs*." *Rishik v. Am. Fed. of Musicians of the United States & Canada AFL-CIO*, CV 09-0359, 2009 WL

14

10671393, at *5 (C.D. Cal. Nov. 24, 2009) (citation omitted) (emphasis added). And "[t]he ritualistic incantation of the phrase 'duty of fair representation' is insufficient to invoke the primary jurisdiction of federal courts." *Marquez*, 525 U.S. at 49 (citation omitted).  In other words, Plaintiff must state "more than just a claim that the union violated the statute.  The plaintiff must adduce facts suggesting that the union's violation of the statute was arbitrary, discriminatory, or in bad faith." *Id.* at 50.

Here, Plaintiff has not sufficiently alleged facts demonstrating that the union's actions were arbitrary, discriminatory, or made in bad faith.  Instead, Plaintiff's allegations seem to solely rely on how the ILWU conducts its internal affairs (*i.e.*, the process of notice and service given to members and nonmembers via its union magazine).  This becomes even more apparent considering that while the substantive paragraphs address the ILWU's internal affairs, Plaintiff attempts to couch Count 3 as a duty of fair representation claim by merely ending with the conclusory statement that the ILWU's actions "violat[ed] the union's duty [of] fair representation."  *See* ECF No. 54 at 14.

Because Count 3 amounts to a challenge to the ILWU's internal activities, the Court does not have jurisdiction over it and GRANTS the motions to dismiss as to this count.

      **D.**    **Count 5**

Plaintiff attempts to cure the defects in Count 5 of the FAC by adding conclusory statements that the GC Decision and subsequent denial of Plaintiff's motion for reconsideration violated his right to due process by not addressing all of his claims. ECF No. 54 at 16.

In its prior dismissal order, the Court concluded it lacked jurisdiction to review the RD Decision and GC Decision. ECF No. 52 at 15-16. Nothing that has been added to the SAC changes that determination. Plaintiff was not entitled to a more thorough explanation of the RD Decision and the GC's refusal to issue a complaint is not a constitutional violation. *See Rockford Redi-Mix Co. v. Zipp*, 482 F. Supp. 489, 493 (N.D. Ill. 1979) (collecting cases).

Thus, the Court again determines that it lacks jurisdiction to review the RD Decision, GC Decision, or the GC denial of reconsideration and so GRANTS the motions to dismiss as to Count 5.

### E. Count 6

In Count 6, Plaintiff asserts the same overall argument as he did in the FAC: that the "constitutional right to not pay union dues afforded to public employees in *Janus* should be afforded to private employees." ECF No. 54 at 18. He elaborates on this by claiming the Hospital is a quasi-public entity and that the ILWU functions as a political organization. *Id*.

The fact that the Hospital receives federal funds, is subject to federal oversight, and serves the general public does not transform it into a public employer for purposes of *Janus*. *Janus* made clear that the analysis differs between public and private sector employees because the interests at stake differ (*e.g.*, wages, pensions, and benefits are important political issues that are not generally so in the private sector) and because the government cannot compel speech. *Janus*, 138 S.Ct. at 2480, 2484; *see Harris v. Quinn*, 573 U.S. 616, 636 (2014) (criticizing *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1997) as "fail[ing] to appreciate the difference between the core union speech involuntarily subsidized by dissenting public-sector employees and the core union speech involuntarily funded by their counterparts in the private sector"). Nothing about the Hospital's funding, oversight, or service to the community raises the concerns addressed in *Janus* and *Harris* regarding public-sector employees.

Plaintiff's argument that the ILWU should be treated as a political group is also unavailing. *Harris* explained that there is a "conceptual difficulty of distinguishing in public-sector cases between union expenditures that are made for collective-bargaining purposes and those that are made to achieve political ends." *Harris*, 573 U.S. at 636. "Collective bargaining concerns the union's dealings with the employer; political advocacy and lobbying are directed at the government. But in the public sector, both collective-bargaining and political advocacy and lobbying

17

are directed at the government." *Id.* at 636–37.  Here, the ILWU's collective bargaining with the Hospital is not directed at the government.  And while — as Plaintiff alleges — the ILWU has a Washington, D.C. office dedicated to lobbying, that fact alone does not transform the ILWU into a public-sector union.  If it did, nearly all unions would qualify as public-sector unions.

In any event, as the NLRB correctly points out, it is undisputed that the ILWU amended its second statement of expenses to list lobbying as a non-chargeable expense.  SAC at 8.  Thus, the SAC fails to state a claim in this count upon which relief can be granted.

The Court therefore GRANTS the motions to dismiss as to Count 6.

## F.    Count 7

In the FAC, Plaintiff challenged the removal of the GC and the authority of the interim GC.  FAC at 13.

The Court liberally interpreted Plaintiff's FAC and opposition to the first motion to dismiss to mean the GC Decision violated the NLRA because the interim GC lacked authority to act when the President removed the previous GC.  ECF No. 52 at 18.  In other words, according to Plaintiff, removing the GC before the term's expiration, "goes against the wording of the NLRA."  *Id.* (citing ECF No. 46 at 6).  The Court, relying on decisions by the NLRB and the Fifth Circuit, concluded the

President's removal of the GC did not violate the NLRA and dismissed Count 7. *Id.* at 21.

The language of Count 7 in the SAC is identical to the language in the FAC. ECF No. 54 at 20.  Therefore, the Court GRANTS the motions to dismiss as to Count 7 for the same reasons outlined in its previous order without leave to amend. ECF No. 52 at 18–21.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss.  As the Court warned Plaintiff in its order dismissing the FAC, *see* ECF No. 52, the SAC would be his last opportunity to cure any defects in his pleading.  *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("The district court dismissed Plaintiff's amended complaint without leave to amend because Plaintiff failed to correct the deficiencies identified in his original complaint.  We find no abuse of discretion in that decision.").  Furthermore, at this late stage, the Court decides that amendment would be futile.  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1060 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.") (citation omitted).  As such, the Court will not grant Plaintiff leave to amend.

The Clerk is DIRECTED to enter judgment in favor of DEFENDANTS and close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 31, 2023.



Jill A. Otake
United States District Judge

---

CIV. NO. 21-00489 JAO-RT; *Shimose v. ILWU, Local 142, et al.*; ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND THE UNITED STATES' JOINDER